Michael C. LIDDELL, a minor, by Minnie LIDDELL, his mother and next friend; Kendra Liddell, a minor, by Minnie Liddell, her mother and next friend; Minnie Liddell; Roderick D. LeGrand, a minor, by Lois LeGrand, his mother and next friend; Lois LeGrand; Clodis Yarber, a minor, by Samuel Yarber, his father and next friend; Samuel Yarber; Earline Caldwell; Lillie Caldwell; Gwendolyn Daniels; National Association for the Advancement of Colored People; United States of America; City of St. Louis, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS; John P. Mahoney, President, Board of Education of the City of St. Louis; Penelope Alcott, a member of the Board of Education; Marjorie R. Smith, a member of the Board of Edu-

cation; Earl E. Nance, Jr., a member of the Board of Education; Thomas F. Bugel, a member of the Board of Education; Louis P. Fister, a member of the Board of Education; Nancy L. Hagan, a member of the Board of Education; Earl P. Holt, III, a member of the Board of Education; Shirley M. Kiel, a member of the Board of Education; Gwendolyn A. Moore, a member of the Board of Education; Dr. Joyce M. Thomas, a member of the Board of Education; Rufus Young, Jr.; Julius C. Dix; David J. Mahan, Interim Superintendent of Schools, Defendants–Appellees,

Ronald Leggett, St. Louis Collector of Revenue, Defendant,

State of Missouri; Mel Carnahan, Governor of the State of Missouri; * Jeremiah W. (Jay) Nixon, Attorney General; Bob Holden, Treasurer; Richard A. Hanson, Commissioner of Administration; Robert E. Bartman, Commissioner of Education; Missouri State Board of Education; Roseann Bentley, Member of the Missouri State Board of Education; Raymond McCallister, Jr., member of the Missouri State Board of Education; Susan D. Finke, member of the Missouri State Board of Education; Thomas R. Davis, member of the Missouri State Board of Education; Gary D. Cunningham, member of the Missouri State Board of Education; Rebecca M. Cook, member of the Missouri State Board of Education; Sharon M. Williams, member of the Missouri State Board of Education, Defendants–Appellants,

Special School District of St. Louis County; Affton Board of Education; Bayless Board of Education; Brentwood Board of Education; Clayton Board of Education; Ferguson–Florissant Board of Education; Hancock Place Board of Education; Hazelwood Board of Education; Jennings Board of Education; Kirkwood Board of Education; LaDue Board of Education; Lindbergh Board of Education; Maplewood–Richmond

Heights Board of Education; Mehlville Board of Education; Normandy Board of Education; Parkway Board of Education; Pattonville Board of Education; Ritenour Board of Education; Riverview Gardens Board of Education; Rockwood Board of Education; University City Board of Education; Valley Park Board of Education; Webster Groves Board of Education; Wellston Board of Education; St. Louis County; Buzz Westfall, County Executive; James Baker, Director of Administration, St. Louis County, Missouri; Robert H. Peterson, Collector of St. Louis County "Contract Account," St. Louis County, Missouri, Defendants,

St. Louis Teachers' Union, Local 420, AFT, AFL–CIO. Intervenor.

No. 92–2510.

United States Court of Appeals, Eighth Circuit.

Submitted March 8, 1994.

Decided March 29, 1994.

* Pursuant to Fed.R.App.P. 43(c).

Counsel who presented argument on behalf of the appellants was John J. Lynch of St. Louis, MO. The names of Michael J. Fields, Bart A. Matanic and John J. Lynch of St. Louis, MO., appear on the brief of the appellants.

Counsel who presented argument on behalf of the appellees was Kenneth C. Brostron of St. Louis, MO. The names of Kenneth C. Brostron, Stephen A. Cooper, Joan M. Swartz of St. Louis, MO, appear on the brief of the appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

In 1980 this court in an en banc opinion ordered that existing magnet and specialty schools in the St. Louis School District be maintained and that additional magnet schools be established.[1] In 1982 we became more precise and required that additional magnet schools be established at the State's expense within the city.[2]

Ten years ago this court in an en banc opinion established an enrollment goal of 14,000 students for the magnet schools in the St. Louis School District.[3] We subsequently stated that this goal was to be achieved no later than the 1989-90 school year. When this goal had not been met in 1990, we admonished the parties to accomplish it at the earliest possible time.[4] We reiterated the need to reach the goal of 14,000 students as recently as 1993.[5] Yet here we are in 1994 and there are still fewer than 11,000 students enrolled in the magnet school program. During the past ten years the magnet school issue has been before this court on at least six occasions, and in the two most recent opinions we repeated the 14,000-student goal.[6]

Throughout the ten-year period, there has been one dispute after another over financial responsibilities, school locations, and themes for the magnet schools. In this appeal the parties dispute what portion of the site costs for the new Gateway Elementary and Middle School magnets should be paid by the State and what portion by the School District. The School District initially selected the publicly-owned Howard site. The site selection was opposed by the City of St. Louis. Thereafter, other sites were suggested by the City but were ultimately rejected as not feasible. The City then suggested the publicly-owned Pruitt–Igoe site. A dispute then arose between the City, the St. Louis Housing Authority, and HUD regarding whether the site should be used, and if so, at what cost.

Two experienced district court judges tried for months to get the parties to agree on this site and to establish the terms for transferring it. The court ultimately had to join the St. Louis Housing Authority and HUD as parties to the school litigation to force an agreement on the site. Meanwhile, construction costs have escalated and the cost of the Pruitt–Igoe site will be substantially more than the Howard site because undemolished foundations and tons of rubble were left on the site, and the School District must bear the cost of removing this material.

The School District now wants the State to pick up 71.5% of the additional costs. The State says it should not be required to do so because the district court fixed its liability for magnet school construction in *Liddell v.*

1. *Adams v. United States,* 620 F.2d 1277, 1297 (8th Cir.1980).

2. *Liddell v. Board of Educ.,* 677 F.2d 626, 642 (8th Cir.), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 142 (1982) (*Liddell V*).

3. *Liddell v. Missouri,* 731 F.2d 1294, 1312 (8th Cir.), *cert. denied,* 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984) (*Liddell VII*).

4. *Liddell v. Board of Educ.,* 907 F.2d 823, 825 (8th Cir.1990) (*Liddell XIX*).

5. *Liddell v. Board of Educ.,* 988 F.2d 844, 848 n. 5 (8th Cir.1993) (*Liddell XXII*).

6. In addition to the 1990 and 1993 decisions just cited, we issued the following four opinions: *Liddell v. Board of Educ.,* 758 F.2d 290, 299 (8th Cir.1985) (*Liddell VIII*); *Liddell v. Board of Educ.,* 801 F.2d 278, 282 (8th Cir.1986) (*Liddell IX*); *Liddell v. Board of Educ.,* 823 F.2d 1252, 1256 (8th Cir.1987) (*Liddell XII*); and *Liddell v. Board of Educ.,* 830 F.2d 823, 829 (8th Cir.1987) (*Liddell XIII*).

*Board of Educ.*, 696 F.Supp. 444, 463 (E.D.Mo.1988), and because it was not in any way responsible for the delays in selecting a site. In this 1988 decision, the district court said that the "State's one-time funding obligation to share the costs of a magnet capital program for the St. Louis city schools shall be deemed fulfilled and satisfied upon deposit of its third and last payment." *Id.* at 464. The State says that it has now paid this amount in full and should not be required to pay one cent more. This court affirmed the district court's decision in 1990 and 1993. *Liddell XXII*, 988 F.2d at 848; *Liddell XIX*, 907 F.2d at 825.

The district court, however, relying in part on an earlier concession by the State that it would bear some of the costs involved in the change of sites, stated:

> City Board's estimated total budget of over $19.5m (*not including* design and administrative fees, or furniture and equipment) is a source of concern to the Court. With relatively minor adjustments for factors such as the rise in construction costs since the issuance of the Court's Magnet Plan, L(2090)88, and the new site selected, the State will not be required to pay more than the amount specified in the Magnet Plan for the Gateway Schools—approximately $14.6m (*including* fees, furniture and equipment). City Board must take this into account at each step in planning the size and configuration of the school, the amount of land needed, etc.

*Liddell v. Board of Educ.*, 795 F.Supp. 927, 929 (E.D.Mo.1992) (emphasis in original).

The district court did not define what it meant by "minor adjustments." Thus, for better or worse, we must decide the case as it comes to us. Either we say that the district court has discretion to increase the State's share of the costs, even minimally, or it does not. Ordinarily we would affirm the district court, as it has been and will continue to be our policy to give the district court maximum discretion in administering the school desegregation orders. Moreover, the district court has justified this trust and has done everything within reason to make sure that the plan to desegregate the St. Louis schools is carried out. This has not been an easy task, particularly because the State generally likes to do less and pay less and the School District wants to do more and have the State pay more. We admire the court's patience in resolving the numerous problems thrust upon it. In this case, however, with great reluctance we feel we must adhere to our earlier holding that the State's obligation for magnet school construction was fixed and that the School District must bear the additional cost.

We note the School District's past assertions that, following voter approval of a $131 million bond issue in April 1991, sufficient money had been set aside to support a $30 million Gateway Elementary and Middle School. This should be sufficient to build a new facility equivalent to those in the suburbs. We regret the fact that hundreds of thousands, if not millions, of hard-to-come-by dollars could have been saved for children's education had the City of St. Louis and the St. Louis Housing Authority worked with the School District to make a suitable site available months ago.[7] As it was, it took drastic action by the district court to bring about a solution to the problem. Were it within our

---

7. The impact of the delays is illustrated by the following exchange:

[Dr. Eugene T. Reville:] ... The continued victims are the children because of delays that occur because people can't get together on minor issues. These aren't major issues, for heaven's sakes. They're minor. And then children again are delayed another year from excellent educational programs in a system that needs as much help as they can in improving its educational system. Another year—it's another year lost. One of the things about education is that a year's loss isn't regained. Children only go through once, and you've heard it before, but it's a fact.

[Attorney Taylor for Caldwell plaintiffs:] Q. There will be some students who will be graduating and miss the opportunity for desegregated education if those Magnets are postponed another year; isn't that correct?
[Dr. Reville:] A. That's absolutely correct, and it doesn't seem responsible to me for continued delays, whether on either side, whether it's the board or the state, and the victims in the final analysis are—I say black children because those are the original victims, but white children, too in an integrated environment. It's not fair to those children.
Vol. I, March 18, 1988 transcript, at 166–67.

power, we would not hesitate to order the offending public bodies who were a major cause of this delay to share in the additional cost.

In closing, we must repeat that fewer than 11,000 students are currently enrolled in magnet schools and that there is a long waiting list of black and white children who want to enroll in these schools. No further delay in reaching the 14,000-student goal will be tolerated.